## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

### CASE NO.: 1:22-cv-01115

BEERSY LLC,

            Plaintiff,

v.

YIWU BACKPACKER BAGS CO., LTD., et al.,

            Defendants.

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff BEERSY LLC, by and through its undersigned counsel, brings this complaint against Defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto (collectively "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff BEERSY LLC ("Beersy") brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Texas's common law.

2.      Plaintiff, Beersy, brings this action for willful design patent infringement under 35 U.S.C. §271 committed in violation of the Plaintiff's exclusive rights to make, use, offer to sell, or sell Plaintiff's patented design, within the United States or for importation into the United

States any patented design during the term of the patent-in-suit, and for all the remedies available under 35 U.S.C. §§ 283, 284, 285, and 289.

## SUBJECT MATTER JURISDICTION

3.      This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

5.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Texas and this district, through at least the internet-based e-commerce stores accessible in Texas and operating under their Seller IDs.

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Texas cause Plaintiff injury in Texas, and Plaintiff's claims arise out of those activities.

8.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## VENUE

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and therefore there is no district in which an action may otherwise be brought.

10.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

11.      Venue is proper in this court pursuant to 28 U.S.C. §1400(b) because Defendants or their agents reside in this judicial district or have committed acts of infringement and have a regular and established place of business in this judicial district.

## THE PLAINTIFF

12.      Beersy is a Washington Limited Liability Company with its principal place of business in Ravensdale, Washington.

13.      Founded in 2019, Beersy creates and sells novelty products under the federally registered trademarks BEERSY and LOCO COLA (the "BLLC Marks"). Beersy's novelty products are designed to form a "skin" or "sleeve" over aluminum cans to hide their true contents. Beersy novelty drinking sleeves are made of silicone and fit tightly to aluminum cans. The exterior of Beersy novelty sleeves show a variety of designs so that someone can use a Beersy to drink, for example, a beer while appearing to be drinking a soft drink. Beersy silicone sleeves disguise the logos on the outside of aluminum cans with Beersy's own humorous designs and logos.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

14.     Beersy's products are sold solely legitimately through its own website, beersy.com, as well as through one small Amazon seller who has been authorized to sell Beersy's products.

15.     Beersy owns the trademarks and design patent described below that are the subject of this action.

16.     Plaintiff offers for sale and sells its products within the state of Texas, including this district, and throughout the United States.

17.     Like many other intellectual property rights owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

18.     Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

19.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

20.     The recent explosion of infringement over the Internet has created an environment that requires companies like Beersy to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A.    PLAINTIFF'S TRADEMARK RIGHTS

21.    Plaintiff created and sells silicone sleeve aluminum can covers under the federally registered trademark "BEERSY" and sells some of its products under the federally registered trademark "LOCO COLA" (collectively the "BLLC Marks").

22.    Plaintiff is the owner of all rights in and to the BEERSY Mark, U.S. Reg. No. 6,015,029 for fitted novelty drinking can sleeves made of silicone that cover an entire aluminum can in International Class 021, registered on March 17, 2020 and shown in Exhibit 1, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Beersy Mark").

23.    The BEERSY Mark consists of the wording "BEERSY" in standard characters, was first used on January 16, 2020, and first used in commerce on that same day.

24.    The BEERSY Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality goods. A true and correct copy of the Certificate of Registration for the BEERSY Mark is attached hereto as Exhibit 1.

25.    In addition to the Beersy Mark, Plaintiff is the owner of all rights in and to the LOCO-COLA Mark, U.S. Reg. No. 5,966,606 for insulating sleeve holders made of silicone for jars, bottles or cans in International Class 021, registered on January 21, 2020 and shown in Exhibit 2, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Loco-Cola Mark").

26.    The Loco-Cola mark consists of the wording "Loco-Cola" in standard characters. The mark was first used on July 1, 2019 and first used in commerce on that same date.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

27.     The Loco-Cola Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality goods. A true and correct copy of the Certificate of Registration for the Loco-Cola mark is attached hereto as Exhibit 2.

28.     The Beersy Mark is displayed on each Beersy product. Shown below is the Beersy Mark as used on one of Plaintiff's products.



29.     In addition, the Loco-Cola Mark is displayed on some of Beersy's products. Shown below is the Loco-Cola Mark as used on the Plaintiffs Product.



30.     The BLLC Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

31.     The BLLC Marks have been used by Plaintiff long prior in time to Defendants' use of copies of those trademarks.

32.     The BLLC Marks have never been assigned or licensed to any of the Defendants.

33.     The BLLC Marks are a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

34.     Plaintiff has carefully monitored and policed the use of the BLLC Marks.

35.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the BLLC Marks.

36.     Plaintiff has extensively used, advertised, and promoted the BLLC Marks in the United States in association with the sale of high-quality goods.

37.     Plaintiff has spent substantial resources promoting the BLLC Marks and products bearing the BLLC Marks.

38.     Recently, sales of products bearing the BLLC Marks have exceeded a million dollars within the United States.

39.     As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the BLLC Marks as being high-quality goods sponsored and approved by Plaintiff.

40.     Accordingly, the BLLC Marks has achieved secondary meaning as identifiers of high-quality goods.

41.     Genuine goods bearing the BLLC Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributor, and unrelated third parties via the Internet.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

42.    Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, Bing, and social media platforms such as Facebook, Instagram, and Twitter, has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

43.    Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

44.    Plaintiff's SEO strategies allow Plaintiff and its authorized retailer to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the BLLC Marks.

## B.    PLAINTIFF'S PATENT RIGHTS

45.    Plaintiff owns U.S. Patent No. US D889,912 S entitled "TAPERED BEVERAGE CONTAINER SLEEVE" (the '912 Patent). A true and correct copy of the '912 Patent is attached hereto as Exhibit 3.

46.    The '912 Patent relates to the ornamental design for a tapered beverage container sleeve.

47.    Plaintiff's '912 Patent has not expired, is valid, and all maintenance fees have been paid and are current.

48.    Plaintiff has never granted authorization to any defendant to import, make, use or sell unauthorized goods using Plaintiff's '912 Patent.

49.    Plaintiff marks BEERSY products with the corresponding Patent number or Patent pending, as seen below.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

50.     Plaintiff prominently displays the design patent number on listings for sale of

Beersy Products on its website, as seen below.



### **DEFENDANTS**

51.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil

Procedure 17(b).

52.     Defendants are individuals and/or business entities of unknown makeup, each of

whom, upon information and belief, either reside and/or operate in foreign jurisdictions,

redistribute products from the same or similar sources in those locations, and/or ship their goods

from the same or similar sources in those locations to shipping and fulfillment centers within the

United States to redistribute their products from those locations.

53.     Defendants are engaged in business in Texas but have not appointed an agent for

service of process.

54.     Upon information and belief, Defendants have registered, established or

purchased, and maintained their Seller IDs.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

55.    Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

56.    Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiff's intellectual property rights as described herein operating and using at least the Seller IDs.

57.    Defendants' directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

58.    Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Texas through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

59.    Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

60.    Upon information and belief, many Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

61.    Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale

counterfeits and infringements of Plaintiff's intellectual property rights unless preliminarily and permanently enjoined.

62.    Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

63.    Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

64.    Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

65.    Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Texas and causing Plaintiff harm and damage within this jurisdiction.

66.    The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Beersy's intellectual property rights and the destruction of the legitimate market sector in which it operates.

67.    Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' COUNTERFEITING ACTIVITIES

68.     Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs.

69.     At least one defendant is also using the listing and associated image identified by the Amazon Standard Identification Number ("ASIN") on Schedule "A" annexed hereto.

70.     Specifically, some of the Defendants are using the BLLC Marks or confusingly similar designations to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

71.     Defendants are using identical copies of the BLLC Marks or confusingly similar designations for different quality goods.

72.     Plaintiff has used the BLLC Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

73.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

74.     Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the BLLC Marks or the '912 patent.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

75.    Defendant's counterfeit and confusingly similar imitations of Plaintiff's products reproduce the main design features of the '912 Patent, as is shown in the Claim Chart attached hereto as Exhibit 4.

76.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

77.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

78.    In so advertising their stores and products, Defendants improperly and unlawfully use the BLLC Marks and/or elements of the '912 patent without Plaintiff's permission.

79.    As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the BLLC Marks and/or the '912 patent.

80.    Specifically, some of the Defendants are using counterfeits and infringements of the BLLC Marks and the '912 Patent in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

81.    By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

82.    Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the BLLC Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

83.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

84.    As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

85.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the BLLC Marks and '912 Patent, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

86.    Defendants' use of the BLLC Marks and the '912 patent, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

87.    Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

88.     If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

89.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

90.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

91.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used and/or controlled by them.

92.     Defendants are likely to transfer or hide their assets to avoid payment of any monetary judgment awarded to Plaintiff.

93.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

94.     If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

95.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

96.     Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

97.     Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's trademarks or patent.

98.     Plaintiff has no adequate remedy at law.

### COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

99.     Plaintiff incorporates the allegations of paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the BLLC Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

101.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the BLLC Marks.

102.    Defendants are continuously infringing and inducing others to infringe the BLLC Marks by using them to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

103.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

104.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

105.    Defendants' above-described illegal actions constitute counterfeiting and infringement of the BLLC Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

106.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

107.    If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

108.    Plaintiff incorporates the allegations of paragraphs 1 through 98 of this Complaint as if fully set forth herein.

109.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of at least one of the BLLC Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

110.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the BLLC Marks and/or the '912 patent are virtually identical in appearance to Plaintiff's genuine goods.

111.    Defendants' Counterfeit Goods are different in quality from Plaintiff's goods, and are of much lower quality.

112.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

113.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

114.    Defendants have authorized infringing uses of the BLLC Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

115.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

116.    Defendants are using counterfeits and infringements of the BLLC Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

117.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

118.    Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

119.    Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW UNFAIR COMPETITON

120.    Plaintiff incorporates the allegations of paragraphs 1 through 98 of this Complaint as if fully set forth herein.

121.    This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to the BLLC Marks in violation of Texas's common law of unfair competition.

122.    Defendants' activities complained of herein constitute unfair methods of competition.

123.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the BLLC Marks.

124.    Defendants are also using counterfeits and infringements of the BLLC Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

125.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the BLLC Marks.

126.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

127.    Plaintiff incorporates the allegations of paragraphs 1 through 98 of this Complaint as if fully set forth herein.

128.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing at least one or more of the BLLC Marks.

129.    Plaintiff is the owner of all common law rights in and to the BLLC Marks.

130.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the BLLC Marks.

131.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the BLLC Marks.

132.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT VI – DESIGN PATENT INFRINGEMENT

148.    Plaintiff incorporates the allegations of paragraphs 1 through 98 of this Complaint as if fully set forth herein.

149.    Plaintiff owns U.S. Patent No. US US D889,912 S entitled "TAPERED BEVERAGE CONTAINER SLEEVE" that covers its BEERSY product (the "'912 Patent").

150.    Defendants have infringed and continue to infringe the '912 Patent either directly or indirectly through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271, by making, using, selling, importing and/or offering to sell infringing products, namely the infringing and counterfeit products sold under the BLLC marks.

151.    Defendants infringing and counterfeit products sold under the BLLC Marks are the same in all material respects.

152.    Defendants' infringement, contributory infringement and/or inducement to infringe has injured Plaintiff and it, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

153.    Defendants' infringement, contributory infringement and/or inducement to infringe has been willful and deliberate because Defendants have notice of or knew of the '912 Patent and have nonetheless injured and will continue to injure Plaintiff, unless and until this Court enters an injunction, which prohibits further infringement and specifically enjoins further manufacture, use, sale, importation and/or offer for sale of products that come within the scope of the '912 Patent.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

       a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the BLLC Marks; from using the BLLC Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the BLLC Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

b.  Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non- genuine goods bearing and/or using counterfeits of the BLLC Marks.

22

c.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the BLLC Marks.

d.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of

the BLLC Marks via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the BLLC Marks associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the BLLC Marks.

f.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the BLLC Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

g.   Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

h. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

i. Entry of an Order requiring Defendants to account to and pay Plaintiff damages for patent infringement in an amount to be determined by the Court pursuant to 35 U.S.C. §§ 284 and 289 which shall in no event be less than a reasonable royalty.

j. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) and 35 U.S.C. § 285 of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

k. Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

l.   Entry of an award of pre-judgment interest on the judgment amount.

m.  Entry of an Order for any further relief as the Court may deem just and proper.

DATED: November 1, 2022                    Respectfully submitted,


*/s/  Joel B. Rothman*
JOEL B. ROTHMAN
joel.rothman@sriplaw.com
CRAIG A. WIRTH
craig.wirth@sriplaw.com
LAYLA T. NGUYEN
layla.nguyen@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

ELIEZER LEKHT
eliezer.lekht@sriplaw.com

**SRIPLAW, P.A.**
175 Pearl Street
Third Floor
Brooklyn, NY 11201
332.600.5599 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Beersy LLC*